NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0166n.06

No. 22-2033

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 14, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ANTHONY TERRELL MCGOWAN,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>CELENA HERBERT, Lieutenant; L. PAUL BAILEY, Sherriff, named as Paul Bailey,<br><br>    Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN<br><br>OPINION |

Before: KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Anthony McGowan, a pretrial detainee, appeals the dismissal of his 42 U.S.C. § 1983 claim against Celena Herbert, a Classification Officer at Berrien County Jail. The district court concluded that McGowan failed to state a claim and dismissed his pro se complaint at the initial screening stage under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. McGowan, who is now represented by counsel, appeals the dismissal of his Fourteenth Amendment failure-to-protect claim against Herbert based on her decision to remove him from protective custody and return him to a shared housing unit, where he was violently attacked by another detainee.[1] For the reasons stated below, we **REVERSE** the district court's dismissal of this claim and **REMAND** the case for further proceedings consistent with this opinion.

---

[1] His complaint also alleged other constitutional claims and listed Sherriff L. Paul Bailey as a Defendant, but McGowan appeals only the dismissal of his failure-to-protect claim against Herbert.

No. 22-2033, *McGowan v. Herbert, et al.*

## I. BACKGROUND[2]

McGowan is currently incarcerated as a pretrial detainee at Berrien County Jail in St. Joseph, Michigan. McGowan alleges that he was labeled a "snitch" by other detainees in his housing unit, Dorm 2-E, after they became aware that he had provided information to the Berrien County Prosecuting Attorney's Office in a "double murder" case against Dwand Carter. In April 2022, McGowan informed a jail official that he needed to be moved out of Dorm 2-E "because inmates were calling him a snitch." Another jail official interviewed McGowan about his request, and McGowan stated that he had been assaulted by Dorm 2-E residents. He was then placed in protective custody.

On May 28, while in protective custody, McGowan sent an affidavit to Herbert, who was "in charge of all inmate housing and placement," in which he "begged and pleaded" not to be removed from protective custody because he was afraid that other inmates would harm or kill him. He averred that he had been "subjected to assaults daily" in Dorm 2-E and that he would be "assaulted or killed" if he returned because "everyone" knew he "gave information on Carter." R. 1-2, McGowan Aff., PageID 10. McGowan stated that if he was "released to any other housing area within the Jail, I'll be assaulted, because Carter has put a price on my head, or maybe even killed." *Id.*

Despite McGowan's request to remain in protective custody, Herbert placed him back in Dorm 2-E on June 13, 2022. He was attacked less than a month later, on July 7, by another detainee who had been moved into Dorm 2-E that day—Richard Hill. When Hill entered Dorm 2-E, he

---

[2] The facts are taken from the pro se complaint and its several attachments. "We may consider exhibits attached to the complaint so long as they are referred to in the complaint and are central to the claims." *Floyd v. County of Kent*, 454 F. App'x 493, 494 n.1 (6th Cir. 2021) (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)).

No. 22-2033, *McGowan v. Herbert, et al.*

asked who Anthony McGowan was. McGowan identified himself, and Hill stated loudly: "So you're the one who jumped on my man's Dwand Carter's case" and "got him bound over on his double murder." McGowan said that he was not involved in the case and left the common area. Hill followed him into his cell, but McGowan showed Hill an edited newspaper clipping to convince Hill not to attack him.

After this initial encounter, Hill recruited another detainee, Dean Bell, to retrieve court records that would confirm whether McGowan testified against Carter. Bell had work privileges that enabled him to access records at the jail, and later that day he delivered to Hill a transcript which showed that McGowan had testified against Carter. After reading the transcript, Hill ran into McGowan's cell and attacked him. Over the course of several minutes, Hill punched McGowan in the face, knocked him down onto his bed, and choked him. During the attack, Hill stated that he was "about to kill [McGowan] for snitching on [Carter]." When other detainees yelled that a deputy was coming, Hill left the cell. McGowan was then able to press an emergency button and notify jail staff that he had been attacked.

McGowan suffered injuries to his head, neck, and body, and lost vision in his left eye. He has been prescribed several medications to treat his anxiety, depression, and nightmares following the incident. The Berrien County Prosecutor's Office charged Hill with assault and battery for the attack, and Hill pleaded guilty. Bell's work privileges were suspended as a result of his involvement.

In September 2022, McGowan filed a pro se complaint, alleging claims against Herbert in her official and personal capacities, and against L. Paul Bailey (the Berrien County Sheriff responsible for overseeing the jail) in his official capacity. He consented to have his case proceed before a magistrate judge, and applied for leave to proceed in forma pauperis, which the court

No. 22-2033, *McGowan v. Herbert, et al.*

granted. The district court then conducted an initial screening and dismissed the entire complaint with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c). This timely appeal followed.

## II. ANALYSIS

We review de novo a district court's sua sponte dismissal of a prisoner's complaint for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). "In determining whether a prisoner has failed to state a claim, we construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Id.* at 504-05 (quoting *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010)).

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022). To state a failure-to-protect claim under the Fourteenth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference," which is "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 728 (quoting *Brawner v. Scott County*, 14 F. 4th 585, 596-97 (6th Cir. 2021)). Four elements are required to meet this standard: (1) the defendant "made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) those conditions put the plaintiff "at substantial risk of suffering serious harm"; (3) the defendant "did not take reasonable available measures to abate that risk," although a

No. 22-2033, *McGowan v. Herbert, et al.*

reasonable officer in her position would have "appreciated the high degree of risk involved—making the consequences of [her] conduct obvious"; and (4) the defendant caused the plaintiff's injuries by not taking such measures. *Id.* at 729 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

The district court concluded that McGowan failed to allege sufficient facts showing that Herbert acted with reckless disregard in removing him from protective custody and placing him back in Dorm 2-E because McGowan did not allege that the same inmates who had threatened him previously were still housed in Dorm 2-E when Herbert returned him to the unit. The court also noted that McGowan remained in Dorm 2-E "without incident" from June 13 to July 7 when Hill—who had not previously resided in Dorm 2-E—was moved into the unit. On appeal, McGowan argues that his complaint adequately alleged each of the *Westmoreland* elements, and that the court's stated reasons for dismissal strayed from precedent.

Beginning with the *Westmoreland* elements, McGowan first alleges that he was "forced to move out of protection" and back into Dorm 2-E by Herbert, which shows that Herbert made an "intentional decision" regarding McGowan's conditions of confinement. *See Westmoreland*, 29 F.4th at 729. Second, he alleges that Herbert's decision to remove him from protective custody and return him to Dorm 2-E put him at a substantial risk of serious harm because "everyone" in Dorm 2-E knew he was a snitch and that there was a price on his head, and because he had been subject to daily assaults when he was previously housed in the unit. As we recognized in *Westmoreland*, "being identified as a 'snitch' in prison puts an inmate at substantial risk of serious assault." *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001)). Third, McGowan alleges that he notified Herbert in his May 28 affidavit that he would likely be assaulted again if transferred back to Dorm 2-E because he is a known snitch. Viewing the alleged facts in

No. 22-2033, *McGowan v. Herbert, et al.*

McGowan's favor, a factfinder could conclude that "a *reasonable* officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences" of removing McGowan from protective custody. *Id.* at 730. Fourth, McGowan sufficiently alleges that Herbert caused his injuries by not taking reasonable precautionary measures. As in *Westmoreland*, McGowan "established this element by showing he suffered physical harm as a result of being labeled a snitch[.]" *Id.* Specifically, McGowan alleges that Hill attacked him because he testified against Carter and Hill stated during the assault that he would kill McGowan "for snitching." Applying *Westmoreland*—a case on all fours with this one—McGowan's complaint plausibly states the elements of a failure-to-protect claim against Herbert.

Turning to the district court's stated reasons for dismissing the claim, McGowan was not required to plead that the detainees who previously threatened him were still housed in Dorm 2-E when Herbert removed McGowan from protective custody. The Supreme Court has explained that a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).McGowan alleges that "everyone" knew he had testified against Carter. Because McGowan's role in Carter's criminal case was common knowledge, it was easy for newcomers like Hill to find out McGowan was a snitch, and there was an incentive to attack him because allegedly there was a bounty on his head. Given that pro se complaints should be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers," we have little difficulty concluding that McGowan's complaint states a failure-to-protect claim against Herbert. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

No. 22-2033, *McGowan v. Herbert, et al.*

Finally, we address McGowan's argument that the district court should have allowed him to amend his complaint to state a claim against Bailey in his individual capacity. Typically, "a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (quoting *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)). Although "[t]here is currently no rule of law in this circuit that *requires* a district court to give *sua sponte* a *pro se* plaintiff leave to amend his complaint absent a request," *Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986) (emphasis added), we have explained that "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA," *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Accordingly, on remand, the district court should consider whether to allow McGowan to amend his complaint as to his failure-to-protect claim against Bailey in his individual capacity. *See LaFountain*, 716 F.3d at 951.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of McGowan's failure-to-protect claim against Herbert, and **REMAND** the case for further proceedings consistent with this opinion.